FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

2017 AUG -1  PH 3:58

GENOVA DIAGNOSTICS, INC.,

    Plaintiff,

v.                                        CASE NO.: 6.17-cv-1420 - OCL-18TRS

SUREILY FONT; ERELYN DIAZ,
and VIBRANT AMERICA, LLC,

    Defendants.

_____/

## VERIFIED COMPLAINT

    Plaintiff, Genova Diagnostics, Inc. ("Genova"), through counsel, files its Verified Complaint in this action and states as follows:

## PARTIES, JURISDICTION, AND VENUE

    1.    This is an action for damages and injunctive relief exceeding $75,000, exclusive of interest, court costs, and attorneys' fees.

    2.    Genova is a Delaware Corporation authorized to do business in the state of Florida and a principal place of business in Asheville, North Carolina.

    3.    Vibrant America, LLC ("Vibrant"), is a Delaware Corporation with its principal place of business in San Carlos, California.

    4.    Vibrant is authorized to do business within the state of Florida and currently doing business in Florida including Orange and Hillsborough counties.

    5.    Based on information and belief, Vibrant's member(s) are all diverse corporations and complete diversity of citizenship is established in this case.

1

4643197v.1

6. Erelyn Diaz ("Diaz") is an individual residing and working in Broward County, Florida.

7. Sureily Font ("Font") is an individual residing and working in Orange County, Florida.

8. Pursuant to 28 U.S.C. §1332, this Court has diversity jurisdiction to hear this case.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1392 and 28 U.S.C. §89 because Font resides and works in Orange County, Florida.

10. Genova has satisfied all conditions precedent to the maintenance of this action.

## FACTUAL BACKGROUND

11. Diaz and Font are both former Genova employees.

12. Diaz and Font were both employed as Territory Sales Managers.

13. On April 9, 2013, Diaz entered into an Employee Nondisclosure, Noncompetition and Assignment Agreement with Genova (the "Diaz Agreement"). A true and correct copy of the Diaz Agreement is attached hereto as **Exhibit 1**.

14. In March of 2014, Font entered into an Employee Nondisclosure, Noncompetition and Assignment Agreement with Genova (the "Font Agreement"). A true and correct copy of the Font Agreement is attached hereto as **Exhibit 2**.

15. Among other provisions, paragraph 1 of the Diaz and Font Agreements protect confidential information by prohibiting Diaz and Font from disclosing the confidential information and requiring Diaz and Font to return all confidential information at the conclusion of their employment. Specifically, paragraph 1 states as follows:

> Confidentiality. I will not at any time, whether during or after the termination of my employment, reveal to anyone outside the Company any of the trade secrets or confidential information of the Company, its customers or suppliers, or any information received in confidence from third parties by the Company.

2

Confidential information of the company is any information or material (a) generated or collected by or used in the operation of the Company that relates to the actual or anticipated business, marketing and sales, strategic planning, products, research and development, or production and/or manufacturing processes, of the Company or its customers or suppliers, including its and their organization, personnel, customers and finances; or (b) suggested by or resulting from any task assigned to me or work performed by me for or on behalf of the Company. I will deliver to the company copies of all confidential information upon the earlier of (a) a request by the Company, or (b) termination of my employment. Upon termination of my employment, I will not retain any such materials or copies.

16.     The Diaz and Font Agreements also contain restrictive covenants that preclude Diaz and Font from working at a competing company for a period of one year following the conclusion of their employment; soliciting customers and prospective customers of Genova; and soliciting employees of Genova. Specifically, paragraph 3 of the Diaz and Font Agreements states as follows:

Restriction on Activities. During the period of my employment with the Company and/or its direct or indirect subsidiaries and for one (1) year thereafter, I will not, in any capacity, directory or indirectly:

(a) personally or enabling/assisting such person or entity to solicit the business or patronage of any customer or prospective customer for any other person or entity for the purpose of selling or providing activities, products or services of which are competitive with any of the businesses, activities, products or services conducted or offered by the Company and its subsidiaries during any period in which I serve as an employee of the Company or any of its subsidiaries (each a "Competing Business").

(b) solicit or induce any customer or prospective customer to terminate or reduce its relationship with the Company;

(c) hire or employ, directly or indirectly, through any enterprise with which I am associated, any current employee or consultant of the Company or any individual who had been employed or served as a consultant to the Company within one year preceding the termination of my employment;

(d) recruit, solicit or induce (or in any way assist another person or enterprise in recruiting, soliciting or inducing) any employee or consultant of the Company to terminate his or her employment or other relationship with the Company; or

(e) engage in activity with is, or assist (whether as owner, part-owner, shareholder, partner, member, director, officer, trustee, employee, joint venture, agent or consultant, or in any other capacity), any business, organization or person other than the Company, the business, activities, products or services conducted or offered by the Company and its subsidiaries during any period in which is serves

3

as an employee of the Company or any of its subsidiaries (each a "Competing Business"). Notwithstanding the foregoing, I may own up to one percent (1%) of the outstanding stock of a publicly held corporation which constitutes or is affiliated with a Competing Business.

17.     The Diaz and Font Agreements also provides for injunctive relief as follows:

Injunctive Relief. I agree that any breach of this Agreement by me will cause irreparable damages to the Company at that in the event of such breach the Company shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief to prevent the violation of my obligations hereunder.

18.     On or about March 31, 2017, Diaz's employment with Genova ceased.

19.     On or about March 31, 2017, Font's employment with Genova ceased.

20.     Shortly after her departure from Genova, Diaz began working with Genova's direct competitor, Vibrant.

21.     Shortly after her departure from Genova, Font began working with Genova's direct competitor, Vibrant.

22.     Based on information and belief, after leaving their employment, Diaz and Font used Genova's confidential customer information to solicit Genova's customers.

23.     On April 28, 2017, Genova issued a correspondence to Vibrant informing the company that it was employing Diaz and Font in violation of non-competition/non-solicitation agreements ("Vibrant Demand Letter"). A true and correct copy of the Vibrant Demand Letter is attached hereto as **Exhibit 3**. On April 28, 2017, Genova also issued cease and desist correspondences to both Diaz and Font regarding the non-competition/non-solicitation issues. The cease and desist letters are attached hereto as **Composite Exhibit 4**.

24.     As of the filing of this suit, Vibrant has refused to terminate its employment relationship with Diaz and Font and Diaz and Font have refused to cease violation of the

4

Agreements. As a result, Defendants have caused Genova to suffer damages by Vibrant's continued employment relationship with Diaz and Font in violation of their non-competition/non-solicitation agreements and Diaz's and Font's continued breach of the Agreements.

25. As a result of Vibrant's, Diaz's and Font's unlawful actions, Genova has experienced damages, including the value of the requested injunctive relief, in excess of $75,000. In addition, Diaz and Font have unjustly enriched themselves at Genova's expense and Genova has been forced to incur legal expenses to enforce its rights.

26. As a result of Vibrant's, Diaz's, and Font's unlawful actions, Genova was required to hire the law firm of Constangy, Brooks, Smith & Prophete, LLP and is obligated to pay its lawyers a reasonable fee for their services.

**COUNT I**
**(TORTIOUS INTERFERENCE WITH BREACHED**
**CONTRACTS AGAINST VIBRANT)**

27. Genova realleges and incorporates by reference paragraphs 1 through 26 above as if set forth fully herein.

28. This is an action against Vibrant for damages as a result of its tortious interference with the Diaz Agreement and Font Agreement, both of which are collectively referred to as the "Breached Agreements," and both of which contain non-competition/non-solicitation provisions that have been breached by Diaz and Font, at the direction of Vibrant.

29. Genova has established contractual and otherwise advantageous business relationships with its customers, and has taken reasonable and lawful steps to protect those relationships, including but not limited to, requiring certain employees to enter into agreements containing specific non-competition/non-solicitation provisions.

5

30.     Vibrant knew or should have known of the Breached Agreements between Genova, Diaz and Font.  Despite this knowledge, Vibrant intentionally and knowingly interfered with Genova's business and contractual relations with its customers and employees.

31.     Vibrant has inducted Diaz and Font to breach the Breached Agreements with Genova by initially employing, and continuing to employ, both Diaz and Font.

32.     Each day that Diaz and Font continue to operate on behalf of Vibrant, in violation of the provisions in the Breached Agreements, with Vibrant's knowledge of the same, constitutes a separate breach of the Breached Agreements.

33.     As a direct and proximate cause of Vibrant's actions, Genova has been harmed, and will continue to be harmed during the pendency of this action absent some form of prejudgment relief, as a result of Vibrant's knowing and intentional tortious interference with the Breached Agreements.

**WHEREFORE**, Genova respectfully requests that this Court enter judgment against Vibrant for its tortious interference with the contractual relationships with Diaz and Font, involving the restrictive covenants, for actual and compensatory damages, punitive damages, pre- and post-judgment interest, court costs, attorneys' fees and costs pursuant to applicable law pursuant to the "Wrongful Act Doctrine," and such other and further relief as is just and proper.

## COUNT II
## (BREACH OF CONTRACT – DIAZ)

34.     Genova realleges and incorporates by references paragraphs 1 through 26 above as if set forth fully herein.

35.     This is an action against Diaz for Breach of the Diaz Agreement.

36.     Diaz breached the confidentiality provisions of the Diaz Agreement by wrongfully taking, retaining, and utilizing Genova's confidential customer information and using it in

6

connection with her new employment position with Vibrant after her employment with Genova ceased.

      37.    As a result of Diaz's breach of the Diaz Agreement, Genova has been damaged.

      **WHEREFORE**, Genova respectfully requests that this Court enter judgment against Diaz for: (1) temporary and permanent injunctive relief requiring Diaz and all persons or entities in active concert with her to return, disgorge and cease using all confidential, proprietary, professional and/or trade secret information of Genova in her possession, custody or control; (2) compensatory damages, pre- and post-judgment interest, attorneys' fees and costs; and (3) such other and further relief as may be just and proper.

## COUNT III
### (BREACH OF CONTRACT – FONT)

      38.    Genova realleges and incorporates by references paragraphs 1 through 26 above as if set forth fully herein.

      39.    This is an action against Font for Breach of the Font Agreement.

      40.    Font breached the confidentiality provisions of the Font Agreement by wrongfully taking, retaining, and utilizing Genova's confidential customer information and using it in connection with her new employment position with Vibrant after her employment with Genova ceased.

      41.    As a result of Font's breach of the Font Agreement, Genova has been damaged.

      **WHEREFORE**, Genova respectfully requests that this Court enter judgment against Font for: (1) temporary and permanent injunctive relief requiring Font and all persons or entities in active concert with her to return, disgorge and cease using all confidential, proprietary, professional and/or trade secret information of Genova in her possession, custody or control; (2)

7

compensatory damages, pre- and post-judgment interest, attorneys' fees and costs; and (3) such other and further relief as may be just and proper.

## COUNT IV
## (MISAPPROPRIATION OF TRADE SECRETS UNDER
## FLORIDA STATUTE §688.001 – VIBRANT, DIAZ, AND FONT)

42.     Genova realleges and incorporates by reference paragraphs 1 through 26 above as if set forth fully herein.

43.     This is an action against Vibrant, Diaz, and Font for misappropriation of Genova's trade secrets.

44.     Genova's customer information, including customer contact information and confidential information, constitutes a trade secret under Florida law.

45.     Specifically, Genova's information is not generally known to third parties and Genova takes reasonable precautions to maintain the secrecy of this information, such as the agreements attached hereto as Exhibits 1 and 2.

46.     Vibrant, Diaz, and Font misappropriated Genova's confidential customer information, including customer contact information.

47.     Vibrant, Diaz, and Font willfully and maliciously misappropriated Genova's trade secrets in an effort to steal Genova's customers and convert them to customers of Vibrant.

48.     After their employment with Genova, Diaz and Font used Genova's trade secret information to convert Genova's customers and the profits associated with said customers for their personal use and use of their new employer, Vibrant.

49.     As a result of Vibrant's, Diaz's, and Fonts willful and malicious misappropriation of Genova's trade secrets, Genova has been damaged.

8

4643197v.1

**WHEREFORE**, Genova respectfully requests that this Court enter judgment against Vibrant, Diaz, and Font for: (1) temporary and permanent injunctive relief requiring Vibrant, Diaz, and Font and all persons or entities in active concert with them to return, disgorge and cease using all trade secret information of Genova in her possession, custody or control; (2) exemplary damages associated with their willful and malicious misappropriation of Genova's trade secrets; (3) compensatory damages in the form of Genova's lost profits and/or the amount by which the defendants have unjustly enriched themselves; (4) attorneys' fees and costs; and (5) such other and further relief as may be just and proper.

<u>COUNT V</u>
**(TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS
RELATIONSHIPS – VIBRANT, DIAZ, AND FONT)**

50.    Genova realleges and incorporates by reference paragraphs 1 through 26 above as if set forth fully herein.

51.    This is an action against Vibrant, Diaz, and Font for tortious interference with advantageous business relationships.

52.    Genova had an advantageous relationship with its customers.

53.    Vibrant, Diaz, and Font knew of the advantageous business relationships between Genova and its customers.

54.    As described above, Vibrant, Diaz, and Font (through Diaz and Font), using improper means and Genova's confidential information, intentionally and unjustifiably interfered with the business relationships between Genova and its customers.

55.    As a results of defendants' tortious interference, Genova has been damaged.

9

4643197v.1

**WHEREFORE,** Genova respectfully requests that this Court enter judgment against Vibrant, Diaz, and Font for compensatory damages, punitive damages, pre- and post-judgment interest, court costs and such other and further relief as is just and proper.

## COUNT VI
## (BREACH OF CONTRACT – DIAZ)

56.     Genova realleges and incorporates by references paragraphs 1 through 26 above as if set forth fully herein.

57.     This is an action against Diaz for Breach of contract.

58.     Diaz breached the confidentiality, non-compete, and non-solicitation provisions of the Diaz Agreement by: (1) wrongfully taking, retaining and/or utilizing Genova's confidential customer information; (2) accepting employment with Vibrant, a company that directly competes with Genova; and (3) soliciting Genova's customers on behalf of Vibrant.

59.     The restrictive covenants contained in the Diaz Agreement are reasonably necessary to protect Genova's legitimate business interests.

60.     Genova has a legitimate business interest in it confidential, proprietary, professional and/or trade secret information, its relationships with its customers and in the good will it developed with its patients.

61.     As a result of Diaz's actions, Genova has been harmed.

**WHEREFORE,** Genova respectfully requests that this Court enter judgment against Diaz for: (1) temporary and permanent injunctive relief prohibiting Diaz from further violating the Diaz Agreement; (2) compensatory damages associated with Diaz's breaches of the Diaz Agreement, together with pre- and post-judgment interest thereon; (3) attorneys' fees and costs; and (4) such other and further relief as may be just and proper.

10

4643197v.1

### COUNT VII
### (BREACH OF CONTRACT – FONT)

62.　　Genova realleges and incorporates by references paragraphs 1 through 26 above as if set forth fully herein.

63.　　This is an action against Font for Breach of contract.

64.　　Font breached the confidentiality, non-compete, and non-solicitation provisions of the Font Agreement by: (1) wrongfully taking, retaining and/or utilizing Genova's confidential customer information; (2) accepting employment with Vibrant, a company that directly competes with Genova; and (3) soliciting Genova's customers on behalf of Vibrant.

65.　　The restrictive covenants contained in the Font Agreement are reasonably necessary to protect Genova's legitimate business interests.

66.　　Genova has a legitimate business interest in it confidential, proprietary, professional and/or trade secret information, its relationships with its customers and in the good will it developed with its patients.

67.　　As a result of Font's actions, Genova has been harmed.

**WHEREFORE**, Genova respectfully requests that this Court enter judgment against Font for: (1) temporary and permanent injunctive relief prohibiting Font from further violating the Font Agreement; (2) compensatory damages associated with Font's breaches of the Font Agreement, together with pre- and post-judgment interest thereon; (3) attorneys' fees and costs; and (4) such other and further relief as may be just and proper.

### COUNT VIII
### (SPECIFIC PERFORMANCE – DIAZ AND FONT)

68.　　Genova realleges and incorporates by references paragraphs 1 through 26 above as if set forth fully herein.

11

69.     This is an action against Diaz and Font for specific performance as a result of breach of the Diaz and Font Agreements and the non-competition provisions therein.

70.     Genova has been damaged, and will continue to be harmed during the pendency of this action absent some form of prejudgment relief, as a result of the defendants' failure to comply with the Diaz and Font Agreements, including by not limited to the non-competition provisions. Money damages alone will not suffice to make Genova whole with respect to the significant business and financial investment that Genova has invested in reliance upon Diaz's and Font's adherence to the Diaz and Font Agreements.

**WHEREFORE,** Genova requests judgment in its favor, awarding specific performance based upon the defendants' breach of the Diaz and Font Agreements, together with court costs and reasonable attorneys' fees.

**COUNT IX**
**(DECLARATORY JUDGMENT – VIBRANT, DIAZ, AND FONT)**

71.     This is an action against the Defendants for declaratory relief pursuant to the "Declaratory Judgment Act," codified at 28 U.S.C. § 2201, as well as other applicable law, to determine the extent to which Defendants may continue to use unlawful means to achieve legal, business, and financial objectives that would be impossible but for the Diaz's and Font's collective breach of Breached Agreements and Vibrant's employment of Diaz and Font with knowledge of the Breached Agreements.

72.     Genova reincorporates by reference the allegations contained in paragraphs 1 through 26 above as though fully set forth herein.

73.     The controversy (hereinafter referred to as the "Controversy") among the Parties focuses on whether or not Vibrant can continue to utilize Diaz and Font as employees in direct violation of the Breached Agreements and whether Diaz and Font may continue to violate the

12

Breached Agreements. The Defendants apparently believe that they can do so, directly and indirectly, by remaining employed with Vibrant and continuing to solicit Genova's customers and use confidential information to attempt to obtain Genova's customers. Defendants' conduct is collectively referred to as the "Actionable Misconduct."

74.     There is a *bona fide*, actual, present practical need for a declaration of the rights and duties of Genova and the Defendants with respect to this Controversy.

75.     The facts surrounding the Controversy are readily ascertainable and can be readily established. Genova and the Defendants require timely adjudication of the Controversy as the status of current business, financial, and legal affairs continue to create an unacceptable situation for all involved.

76.     Genova seeks declaratory relief that the Actionable Misconduct by the Defendants is in breach of Font's and Diaz's contractual relations with Genova, that the Defendants may not disclose and otherwise continue to misuse Genova's confidential information, that the Defendants may not continue to unfairly compete with Genova, to solicit customers, all in a manner prohibited under the Breached Agreements, and that all of the foregoing is tortious and actionable by Genova against the Defendants.

77.     The rights of Genova and the Defendants (together, the "Parties"), and other interested parties, are dependent upon the adjudication of the Controversy.

78.     The Parties are all before this Court, and thus this is the correct forum in which to determine the rights of the Parties.

79.     A range of equitable considerations, including a weighing of the relative burdens on the Parties to this proceeding, and the equitable nature and authority of the Court, dictate that declaratory relief regarding the Controversy is appropriate at this time.

13

80.    It cannot be reasonably disputed that:

    a.   the Parties will experience a substantial continuing Controversy based upon the claims on the subject Actionable Misconduct;

    b.   the continuation of the Actionable Misconduct is assured in absence of judicial intervention;

    c.   the Actionable Misconduct is real and immediate, and not conjectural, hypothetical, contingent, or speculative; and

    d.   an actual controversy exists regarding the Actionable Misconduct.

81.    The Controversy presented in this Count is ripe. The Parties are unsure as to their relative rights and remedies as to the Controversy. The Parties require this Court's declaratory relief in order to proceed.

**WHEREFORE,** Genova requests declaratory judgment regarding all aspects of the Controversy, in its favor and against the Defendants, consistent with all of the foregoing, and all other appropriate relief.

## COUNT X
### (INJUNCTIVE RELIEF – VIBRANT, DIAZ, AND FONT)

82.    This is an action for injunctive relief, to enjoin the Defendants from engaging in any continuation of the Actionable Misconduct or asserting or engaging in any conduct predicated upon the violation of the Non-Compete Provisions.

83.    Genova reincorporates by reference the allegations contained in paragraphs 1 through 26 and 73 above as though fully set forth herein.

84.    The relief sought in this Complaint is expressly contemplated pursuant to the language in the Breach Agreements as it pertains to Diaz's and Font's conduct within this district, as agents and extensions of Vibrant, and under principals of *respondeat superior*.

14

85.     Vibrant is causing the Diaz and Font to further breach the non-competition/non-solicitation provisions in their new capacities at Vibrant.

86.     Genova is also entitled to injunctive relief with respect to continued disclosure of confidential information pursuant to the language in paragraph 12 of the Breached Agreements.

87.     Genova has invested substantially in the development of its customers, employees, confidential information, and other resources. Genova has further developed an enormous amount of goodwill with its customers in the Florida markets. Substantial relationships of this kind, associated with a particular geographic location or marketing area are legitimate business interests justifying a restrictive covenant.

88.     It is long recognized that business relationship with customers and goodwill in the community as a legitimate business interest worthy of protection. *Akey v. Murphy*, 238 So. 2d 94, 96 (Fla. 1970) (goodwill is a reasonable interest sufficient to support a covenant not to compete and transfer of goodwill is implied in connection with the withdrawal of a partner from a medical business); *Karlin v. Weinberg*, 390 A. 2d 1161, 1166 (N.J. 1978) (employers have a legitimate interest in protection of Customer relationships); *Weber v. Tillman*, 913 P.2d 84, 92 (Kan. 1996) (recognizing that goodwill developed over years of business activities is a recognized protectable interest that former employee should not be allowed to misappropriate); *Cogley Clinic v. Martini*, 112 N.W.2d 679, 681-682 (Iowa 1962) (finding restriction reasonably justified to protect business activities' goodwill even where employer failed to show an exodus of Customers since the opening of competing business's new office); *Canfield v. Spear*, 254 N.t.2d 433 (Hl. 1969) (restrictive covenant was reasonable and health clinic had protectable interest in patients even though clinic had not yet obtained a replacement dermatologist). Genova's business is no different for purposes

15

of protecting it from the actions of the Defendants as the instigators of the breaches of the Breached Agreements by Diaz and Font.

89.    In addition to Genova's legitimate interest in its customer base, human resources, and goodwill, Genova has a legitimate business interest in protecting the confidential information. Diaz and Font executed the Breached Agreements in favor of Genova as a condition to their employment. Genova has a legitimate business interest in protecting its initial investment in the confidential information that is within Diaz's and Font's business knowledge at this time.

90.    The heart of all enforceable covenants not to compete is the aim of preventing unfair competition or unjust enrichment at the employer's expense. Genova also has a legitimate business interest in protecting its financial interests and other relationships that depend on the non-compete provisions among the employees. Genova has a legitimate business interest in the continued success of its business activities, which is dependent upon the enforcement of the non-competition/non-solicitation agreements among all of its present and applicable former employees.

91.    When Genova commits to its employees, these employees receive numerous benefits from Genova. But without the protection of the Breached Agreements, Genova has no protection against its employees leaving once they have used Genova's resources to build their business activities. Such an appropriation of Genova's assets is clearly unfair competition and justifies its restrictive covenant. This is all the more obvious when one considers the magnitude of Vibrant, which has participated in the fruits of the Diaz's and Font's misconduct for its own benefit.

92.    The duration of the Breached Agreements is extremely reasonable given the length of time it may take Genova to reconstitute the team of employees to service its customers. Furthermore, the duration of the Breached Agreements is a reasonable amount of time for Genova

16

to attempt to retain its customer base using its existing employees, while at the same time introducing new employees to the community.

93.     As set out above, the damages Genova will suffer if the Breached Agreements are not enforced are incalculable and include intangible losses such as loss of goodwill and referral sources. Furthermore, the effect of the failure to enforce the Breached Agreements is incalculable. The damages stemming from the reach of the Breached Agreements do not provide Genova with an adequate remedy at law because a money judgment is not sufficient.

94.     Furthermore, the same reasons that justify an assumption of irreparable injury upon establishing an enforceable restrictive covenant normally make it clear that money damages, even if capable of being proved, cannot compensate an employer for all aspects of such a violation. The loss of goodwill does not simply stem from the loss of a few of the customers or employees, but from the invasion of Genova's corporate privacy, and the convenient taking of referral source information and confidential information that have required many years for Genova to develop.

95.     Vibrant, including through its employment of Diaz and Font, is now in direct competition with Genova and its remaining employees. As extensions of Vibrant, Diaz and Font have attempted to arrogate customers, confidential information, and other resources of Genova. Through Diaz and Font, Vibrant is soliciting the referral sources to transfer existing customers, confidential information, and other resources to Vibrant at the unfair expense of Genova.

96.     Genova depends upon its customers, confidential information, and other resources for the continued success of its business activities. Genova has long standing relationships with its customers within this district and throughout Florida. Genova is entitled to protect its relationships within the areas.

17

97. As a result of the Actionable Misconduct, Genova has been harmed and believes itself to be at risk in business, financial, and legal terms unless judicial intervention is forthcoming.

98. Unless the Actionable Misconduct ceases, Genova will continue to suffer irreparable harm.

99. With respect to the Actionable Misconduct, Genova lacks an adequate remedy at law.

100. In particular, but without limitation, the Defendants should be enjoined from the following activities wherever prohibited:

      a. the Defendants must be enjoined from authorizing or directing Diaz and Font from using any Confidential Information derived from their tenure at Genova;

      b. the Defendants must be enjoined from acting, by or through Diaz and Font, to access records of Genova that constitute confidential information, including client lists and contact information, of Genova;

      c. the Defendants must be enjoined from competing with Genova, by or through Diaz and Font;

      d. the Defendants must be enjoined from soliciting Customers, by or through Diaz and Font;

      e. the Defendants must be enjoined from otherwise authorizing or directing breach of the Breached Agreements by Diaz and Font.

**WHEREFORE**, Genova requests injunctive relief regarding all of the Actionable Misconduct, in its favor and against the Defendants, consistent with all of the foregoing, and all other appropriate relief.

18

## VERIFICATION PAGE

GENOVA DIAGNOSTICS, INC.

Sign: _____

Print: _Chris S. Smith_____

Title: _CEO_____

STATE OF _North Carolina_____

COUNTY OF _Buncombe_____

    I HEREBY CERTIFY that on this day before me, an officer duly authorized to

administer oaths, personally appeared in the county and state aforesaid, the _CEO_____

of GENOVA DIAGNOSTICS, INC. [✓] who being personally known or [ ] having produced

the following as identification _____ and after being sworn, says

that the foregoing answers to Plaintiff's Interrogatories are true and correct to the best of his/her

own personal knowledge.

    Sworn to and subscribed before me this _25_ day of ___July_____ 2017.

_____

Name typed/printed: _Krista B. Gamble____

Notary Public, State of _NC____

My Notary Commission Seal: _Exp. 07.10.19_



19

Respectfully submitted this 31st day of July, 2017.

CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
*Attorneys for Plaintiff GENOVA DIAGNOSTICS, INC.*

By: _____

PHILLIP J. HARRIS
Fla. Bar No. 44107
MICHAEL D. MALFITANO
Fla. Bar No. 188247
100 North Tampa Street, Suite 3350
Post Office Box 1840
Tampa, Florida  33601-1840
Telephone:      (813) 223-7166
Facsimile        (813) 223-2515
Primary Email:          pharris@constangy.com
Secondary Email:      mmalfitano@constangy.com
Secondary Email:      tampa@constangy.com

20

4643197v.1